

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 9, 2015**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD EUGENE KESSLER, JR. and | § | CASE NO. 09-60247-RLJ-13 |
| VIRGINIA MAE KESSLER, | § | |
| | § | |
| DEBTORS. | § | |

## MEMORANDUM OPINION

Section 1328(a) of the Bankruptcy Code provides that upon completion of all payments *under* a chapter 13 plan, a chapter 13 debtor is, with a few exceptions, entitled to a discharge of debts provided for in the plan. Richard and Virginia Kessler, contending that they have completed their plan payments, move for entry of discharge. They did complete all payments *to the trustee*, which included their mortgage arrears, but failed to make their regular, *direct* mortgage payments to their mortgagee during the duration of the plan. The Court is thus faced with the issue of whether, under § 1328, they are each entitled to receive a chapter 13 discharge.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

1

**Background**

Richard and Virginia Kessler filed for chapter 13 relief on November 2, 2009. Their chapter 13 plan (Plan) was confirmed on January 11, 2010. The Plan provided for 60 payments of $300 each to be made to the trustee and for *direct* payments to certain secured creditors. The Plan states that they were $8,595.70 in arrears on their mortgage debt, with an outstanding balance of $99,154.[1] The Plan provided for the curing of the pre-petition mortgage arrears and for the maintenance of their mortgage payments during the Plan. The pre-petition arrears were to be cured by payments made to the trustee, while the Kesslers were to make the regular, post-petition payments *directly* to Bank of America Home Loans (BoA), the mortgagee.[2]

The Kesslers completed the payments to the trustee as required by the Plan on December 1, 2014, thus curing the pre-petition arrears owed to BoA. *See* Trustee's Notice of Final Cure Payment [Docket No. 53]. But the Kesslers failed to make the direct payments as promised and as allowed for under § 1322(b)(5);[3] as a result, their post-petition arrearage is $40,922.89.[4]

Notwithstanding their failure to stay current on their post-petition mortgage payments, the Kesslers move for discharge. The Kesslers argue that because long-term debts are not discharged under § 1328(a)(1), their failure to make payments on a long-term debt (i.e., their mortgage debt)

---

[1] Bank of America, N.A.'s proof of claim, filed on August 26, 2011, reflects pre-petition arrears of $8,351.92 and a total secured claim of $105,911.42 [Claim No. 7-1]. Bank of America, N.A. then filed an amended proof of claim on May 14, 2014, reflecting pre-petition arrears of $8,321.92 and a total secured claim of $105,144.31 [Claim No. 7-2].

[2] Section II, Part G of the General Provisions of the Plan provides that "[a]ll secured claims listed in Section I, Part G shall be paid DIRECT by the Debtor(s) in accordance with the terms of their agreement, unless provided in Section I, Part M." Plan at 6. The Kesslers' mortgage was listed in Section I, Part G, and there were no additional terms in Part M; they, therefore, agreed to make the payments directly.

[3] On a secured debt that matures beyond the required term of the plan, like a home mortgage debt, § 1322(b)(5) allows the debtor, by the chapter 13 plan, to cure pre-petition defaults within a reasonable time and then to maintain the ongoing payments that accrue on the debt.

[4] BoA's response indicates that, as of the date of its response, the Kesslers had failed to make payments from January 2012 through November 2014.

should not prevent them from receiving a discharge. They also contend that the condition at § 1328(a) for receipt of a discharge in chapter 13—the completion of all payments *under the plan*—does not include long-term debts. Finally, the Kesslers submit that BoA's failure to object to the discharge constitutes a waiver of its right to object.

## Discussion

**1. Section 1328(a): The Chapter 13 Discharge**

Section 1328 of the Bankruptcy Code provides for the chapter 13 discharge. *See* 11 U.S.C. § 1328. It provides that once a debtor completes *all payments under the plan*, the court shall, with a few exceptions, grant a discharge of the debts *provided for by the plan*. *Id*. One of the exceptions, as relevant here, concerns the types of debts addressed at § 1322(b)(5).[5] Section 1322(b)(5) states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." § 1322(b)(5). Stated otherwise, § 1322(b)(5) "provides for the curing of any default, then, only when the plan also provides for the maintenance of the current mortgage payments while the case is pending." *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 489 (5th Cir. 1982). As a corollary to § 1322(b)(5), § 1328(a)(1) specifies that a long-term debt that is treated per § 1322(b)(5)—i.e., cured with payments resumed—is not discharged upon completion of payments under the plan. 11 U.S.C. § 1328(a)(1).

The Kesslers' arguments are mostly rebutted by the clear import of the statutory provisions. They submit that because long-term debts are not dischargeable under § 1328(a)(1), the failure to service such a debt during the plan term should not prevent the discharge. They reason that since

---

[5] *See supra* note 3.

long-term debts are typically paid *outside the plan*, such debts "are not affected at all by the plan completion or a debtor's general discharge." Debtors' Brief [Docket No. 64] at 4. This raises the question of whether the long-term debt is paid *outside the plan* or *under the plan*; and, in particular, whether *direct payments* are payments under the plan. The statute, as construed by the Fifth Circuit, provides that post-petition payments of a mortgage debt, as a long-term debt, whether paid *direct* or through the trustee, are treated as paid *under the plan* when the plan also provides for the curing of pre-petition arrears on the debt. *See Foster*, 670 F.2d at 489.

The Kesslers' reference to payments "outside the plan"—meaning, for them, payments on debt that is provided for in the plan but is paid *directly* to the secured creditor (and thus not through the trustee)—conjures up the use of such phrase in an earlier context that no longer applies.[6] In *Foster*, the Fifth Circuit discussed the two possible interpretations to the phrase "outside the plan." *Id.* at 485–86. Under one interpretation, the debt is treated under the plan but the debtors act as the "disbursing agent" and make payments "directly to the creditors rather than through the standing trustee." *Id.* at 486. The alternative meaning is that "outside the plan" refers to payments of debts not treated by the terms of the plan. *Id.* The first construction of the phrase reflects the way payments were provided for here. The Fifth Circuit in *Foster* held that payments

---

[6] The Court in *Foster*, explained that

> The question whether claims were dealt with by the plan or were treated outside the plan was significant under the Bankruptcy Act of 1898, precursor of the present Bankruptcy Code, because the Act required that secured creditors whose claims were dealt with by a plan approve the plan ….
> Because of the provision in s 642 of Chapter XIII that 'secured creditors whose claims are dealt with by the plan' had to accept such a plan, the practice developed in Chapter XIII that certain secured creditors were not dealt with by the terms of the plan, but rather were to be treated 'outside' the provisions of the plan. This practice was intended to avoid the problem of a rejecting secured creditor being dealt with by the plan, and thus creating, in the view of some courts, a bar to confirmation.

*Foster*, 670 F.2d at 485 (quoting *In re Blevins*, 1 B.R. 442, 443 (Bankr. S.D. Ohio 1979)) (footnote omitted). Under the Code, however, a debtor may obtain confirmation without the acceptance of secured creditors. *See* 11 U.S.C. §§ 1325(a)(5)(B) and 1322(b)(5).

4

so made are indeed made *under the plan*. *Id*. It follows, then, that a payment truly "outside the plan" refers to a payment on a debt that is *not* provided for by the terms of a plan. A current, fully secured claim may, for example, be left unaffected and thus excluded from the plan. *See id.* at 488–89. Such claim would then be paid "outside the plan."[7] When a debtor chooses to exclude a secured debt from treatment under the plan, "the lien securing [such debt] merely passes through the bankruptcy case unaffected"; as a consequence, it will not be discharged. *In re Harris*, 107 B.R. 204, 206 (Bankr. D. Neb. 1989).

Any payment made in accordance with the provisions of a chapter 13 plan is a payment under the plan; and a debt is provided for under the plan so long as a provision treats it. *See id.* at 208 ("To provide for a claim under § 1328(a), a plan need only 'make a provision for it, i.e., deal with or refer to it.'" (quoting *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1122 (9th Cir. 1983))). Debts provided for in a chapter 13 plan are typically paid through the trustee. The debtor can, however, be "designated as disbursing agent for some payments under the plan." *Foster*, 670 F.2d. at 488. Such arrangement, where the debtor pays a secured creditor directly rather than through the trustee, is a *direct* payment. It is not, as the Kesslers seemingly argue, a payment "outside the plan."

Courts agree with the interpretation here that a payment is under the plan when the debt is provided for in the plan. *See, e.g.*, *In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014). The Kesslers' chapter 13 plan provided for the mortgage debt. Section I, Part G of the Plan, titled "SECURED CREDITORS (Paid Direct)," lists the BoA mortgage. *See* Plan at 2. The General Provisions of the Plan, Section II, Part G, states, "[a]ll secured claims listed in Section I, Part G shall be paid DIRECT by the Debtor(s) in accordance with the terms of their agreement . . . ." *Id.*

---

[7] The Court recognizes that, for chapter 13 cases in its divisions, *all* secured creditors are accounted for and thus at least mentioned in the chapter 13 plans.

at 5. Though the payments were to go directly from the Kesslers to BoA, the debt was still *provided for* by the terms of the Plan. Such direct mortgage payments, if made, were payments "under the plan."

This conclusion is further supported by § 1322(b)(5). In the context of residential mortgage debts, a debtor has the option to make his mortgage payments under the plan or outside the plan. But a debtor loses the option to make payments that are truly outside the plan if the plan provides for the curing of a default under the mortgage. *Foster*, 670 F.2d at 489 (citing § 1322(b)(5)). In such instances, "a plan may not provide for the making of the current payment on a mortgage claim outside the plan while curing the arrearage on that claim under the plan pursuant to § 1322(b)(5). . . . [F]or the arrearage on a mortgage claim to be cured under § 1322(b)(5), the current mortgage payments while the case is pending must be provided for in the plan." *Id.* Given the restriction of § 1322(b)(5) that a plan providing for the curing of arrears must also provide for the regular payments, it follows that when a plan provides for the curing of arrears on a mortgage and the debtor makes *direct* payments on the mortgage during the plan, such payments are *under the plan*.

The Kesslers have failed to make all payments under their chapter 13 plan.

**2. Waiver under *Espinosa***

The Kesslers next argue that even if the direct mortgage maintenance payments are payments under the plan, BoA's failure to object to their motion for discharge waives the objection. In support of their argument, they rely on *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), and state that "*Espinosa* stands for the principle that a creditor who fails to object may not deny a discharge even if the Chapter 13 confirmation was plain error." Debtors' Brief at 5. The Court disagrees.

In *Espinosa*, the Supreme Court addressed whether a bankruptcy court's order that

confirmed a chapter 13 plan was void under Federal Rule of Civil Procedure 60(b)(4). *Espinosa*, 559 U.S. at 263–64. The plan provided for payment of the principal amount of a student loan debt of the debtor with the accrued interest being discharged upon repayment of the principal. *Id.* at 264. The bankruptcy court confirmed the plan without making an "undue hardship" determination, which finding is required for discharging a student loan debt, 11 U.S.C. §§ 523(a)(8), 1328(a)(2); this constituted "legal error" by the bankruptcy court as it violated Federal Rule of Bankruptcy Procedure 7001(6), which requires bankruptcy courts to make "undue hardship" determinations in formal adversary proceedings—i.e., by the filing and prosecution of a lawsuit. *Id.* at 263–64. Upon completion of the plan by the debtor, the balance of the student loan debt was discharged. Three years after the plan was completed, the Department of Education sought to collect from the debtor for the unpaid interest on the student loans. *Id.* at 266. The debtor filed a motion in the bankruptcy court seeking to enforce his discharge order and directing the creditor to stop all collection efforts. *Id.* The creditor opposed the motion and filed a cross-motion under Federal Rule of Civil Procedure 60(b)(4) to render the plan confirmation void. *Id.*

The Supreme Court first addressed the cross-motion seeking to void the plan confirmation order under Rule 60(b)(4) and held that the confirmation order was not void. *Id.* at 270. To render void a final judgment, the movant must demonstrate a jurisdictional error or a due process violation; the creditor failed to show either. *Id.* at 271–73. The Supreme Court added that the bankruptcy court's failure to comply with the self-executing requirement of § 523(a)(8)—to make an "undue hardship" determination prior to confirming the plan—is not "on par with the jurisdictional and notice failings that define void judgments that qualify for relief under Rule 60(b)(4)." *Id.* at 273.

Second, the Supreme Court said the Ninth Circuit had gone "too far" in holding that "a bankruptcy court presented with a debtor's plan that proposes to discharge a student loan debt, in

the absence of an adversary proceeding to determine undue hardship, should confirm the plan despite its failure to comply with the Code and Rules." *Id.* at 276. The Court said as follows:

> [A] Chapter 13 plan that proposes to discharge a student loan debt without a determination of undue hardship violates §§ 1328(a)(2) and 523(a)(8). Failure to comply with this self-executing requirement should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all.

*Id.* at 276–77.

Here, the Kesslers' waiver argument is meritless because there is no requirement that the creditor object to the discharge for the Court to deny discharge. Section 1328(a) is self-executing as a discharge can be granted "as soon as practicable after completion by the debtor of all payments under the plan . . . ." 11 U.S.C. § 1328(a). "There is no requirement that the debtor apply for a discharge." 8 Collier on Bankruptcy ¶ 1328.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The Kesslers' reliance on *Espinosa* is misplaced. The Supreme Court in *Espinosa* held that it could not render void the bankruptcy court's order, despite the bankruptcy court's error; effectively approving a partial discharge of the student loan debt did not constitute the jurisdictional, due process concerns needed to void a judgment. *Espinosa*, 559 U.S. at 273–76. *Espinosa*, in fact, undermines the Kesslers' argument as it explains that when confronted with self-executing provisions, such as §§ 1328(a)(2) and 523(a)(8), "the Code makes plain that bankruptcy courts have the authority—indeed, the *obligation*—to direct a debtor to conform his plan to the requirements . . . ." *Id.* at 277 (emphasis added). The Court must abide by this obligation.

## Conclusion

The Kesslers' Plan treated BoA in accordance with § 1322(b)(5) of the Code. As such, their required payments to BoA, whether through the trustee or direct, were made under their Plan. Section 1328(a) directs the Court to grant a discharge upon completion of all payments under the plan. *See* § 1328(a). The Kesslers did not complete all payments under the Plan; the Court cannot

8

grant them discharges.

### End of Memorandum Opinion ###